

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00310-CV

———————————————

MEGHAN GRANT, Appellant

V.

JOSHUA FINECY, ANTHONY LONG, AND KYLE RANDLE, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-342682-23

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

This is an accelerated interlocutory appeal pursuant to the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a)(12) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA Section 27.003). Appellant Meghan Grant contends that the trial court erred by denying her TCPA motion to dismiss the stalking and civil conspiracy claims asserted against her by Appellees Joshua Finecy, Anthony Long, and Kyle Randle. Because we conclude that Appellees' claims are not subject to dismissal under the TCPA, we affirm.

## II. BACKGROUND

On April 23, 2023, Fort Brewery and Pizza, a restaurant and entertainment venue located in Fort Worth, hosted a brunch featuring entertainment by drag performers. Fort Brewery advertised the event as family-friendly and did not impose any age requirements.

On the day of the event, two groups gathered outside the venue. The first group, which included Grant and members of the Elm Fork chapter of the John Brown Gun Club (Elm Fork JBGC), supported the event. The second group, which included Appellees, opposed and protested it.

2

Appellees allege[1] that approximately fifteen members of the Elm Fork JBGC were present and that nearly all of them were fully masked to conceal their identities. According to Appellees, the Elm Fork JBGC contingent was heavily armed: five members were carrying long rifles and others openly carried handguns.

Appellees claim that within minutes of their arrival, certain Elm Fork JBGC members "launched a planned and coordinated attack" on them. According to Appellees, three Elm Fork JBGC members[2] crossed the street to confront them and their fellow protesters. One of the three—Samuel Fowlkes—pulled back so that his two comrades, each of whom was armed with a long gun and was carrying an open umbrella, could shield him from Appellees. When his blockers were in position, Fowlkes quickly leaned forward between them and doused Appellees' faces with pepper spray. He then hid behind his two blockers (and their umbrellas) before fleeing back across the street and rejoining the larger group of Elm Fork JBGC members.

After the incident, Fort Worth police, who had been monitoring the event, arrested Fowlkes. Grant and Christopher Guillot attempted to help Fowlkes escape

---

[1]Our description of the events giving rise to the underlying lawsuit generally tracks the allegations in Appellees' petition. Because no trial has yet occurred in this case, our opinion should not be read to suggest that these allegations are necessarily true.

[2]Appellees do not allege that Grant was one of these three individuals.

and were also arrested. At the time of Grant's arrest, she was carrying a "Smith & Wesson 9 mm handgun with a mounted 'red dot' sight and a Streamlight TLR-6 tactical light with red laser"; this weapon was confiscated by law enforcement. Grant was charged with assaulting police officers, interfering with public duties, and resisting arrest.

Appellees, claiming that they were injured in the attack, filed suit against Fowlkes and his alleged conspirators, including Grant, Guillot, and the Elm Fork JBGC. In their petition, Appellees assert four causes of action: assault, battery, civil conspiracy, and stalking. However, only the last two causes of action are directed at Grant; Appellees' assault and battery claims are aimed solely at Fowlkes.

Grant, asserting that Appellees had brought their suit in response to her exercise of her freedoms of association, petition, and speech, filed a motion to dismiss Appellees' claims under the TCPA. Following a hearing, the trial court signed an order denying Grant's TCPA motion. This interlocutory appeal followed. *See id.* § 51.014(a)(12).

### III. DISCUSSION

In what amounts to a single issue,[3] Grant contends that the trial court erred by denying her motion to dismiss because the TCPA applies to Appellees' causes of

---

[3]Grant's brief enumerates five issues, but her second through fifth issues are, in essence, subparts of the argument raised in her first issue—that the trial court erred by denying her TCPA motion to dismiss. Because all of Grant's issues pertain to the overarching question of whether the trial court erred by denying her TCPA motion to

4

action against her and because Appellees failed to establish each essential element of their claims by clear and specific evidence. We disagree.

## A. Standard of Review and Governing Law

The TCPA—commonly referred to as Texas's anti-SLAPP[4] statute—is intended to "protect[] citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (summarizing TCPA's purpose as "encourag[ing] and safeguard[ing] the constitutional rights of persons . . . and, at the same time, protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury").

A party who moves for dismissal under the TCPA invokes a three-step, burden-shifting process: (1) first, the movant seeking dismissal must demonstrate that a "legal action" has been brought against her and that the action is "based on or is in response to" an exercise of a protected constitutional right; (2) then the burden shifts to the party bringing the legal action to avoid dismissal by establishing, by clear and

---

dismiss, we will treat them as a single complaint. *See McKinney v. Meador*, 695 S.W.2d 812, 813 (Tex. App.—Tyler 1985, writ ref'd n.r.e) (combining all of appellant's points addressing separate elements of prejudgment interest claim and treating them as one challenge to the propriety of awarding prejudgment interest); *see also Espey v. Crown Mins. Co.*, No. 09-93-053-CV, 1994 WL 503969, at *3 (Tex. App.—Beaumont Sept. 15, 1994, writ dism'd by agr.) (not designated for publication) (treating separate points of error as a single complaint).

[4]SLAPP stands for Strategic Lawsuit Against Public Participation. *See Windsor v. Round*, 591 S.W.3d 654, 658 (Tex. App.—Waco 2019, pet. denied).

specific evidence, a prima facie case for each essential element of the claim in question; and (3) finally, the burden shifts back to the movant to justify dismissal by establishing an affirmative defense or other ground on which she is entitled to judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d); *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss—including its determination of the parties' satisfaction of their respective burdens—de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Miller*, 2022 WL 60606, at *1–2. Our review encompasses "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based," and we view all of these in a light most favorable to the nonmovant. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.); *Stallion Oilfield Servs., Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied).

## B. Bodily-Injury Exemption

Intertwined with and overlying the TCPA's multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a); *Temple v. Cortez Law Firm, PLLC*,

657 S.W.3d 337, 343 (Tex. App.—Dallas 2022, no pet.). When a nonmovant invokes an exemption, the trial court must consider its applicability in the context of determining whether the TCPA movant has met its initial burden under the first step of the dismissal process. *See Temple*, 657 S.W.3d at 345–46 (concluding that when a TCPA movant's step-one burden and the nonmovant's exemption claim are both disputed, a court may address these issues in any order). As part of this analysis, the nonmovant bears the burden of proving the statutory exemption. *Id.* at 343; *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied). If the nonmovant proves that an exemption applies to a particular legal action, that action may not be dismissed under the TCPA, and the nonmovant is relieved from making a prima facie case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a); *Temple*, 657 S.W.3d at 343; *see also Round Table Physicians Grp., PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Atlas Survival Shelters, LLC v. Scott*, No. 12-20-00054-CV, 2020 WL 6788714, at *6 (Tex. App.—Tyler Nov. 18, 2020, no pet.) (mem. op.).

Among the TCPA's enumerated exemptions is the so-called bodily-injury exemption, which provides that the TCPA does not apply to any "legal action seeking recovery for bodily injury" or to "statements made regarding that legal action." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(3). Appellees contend that this exemption applies to their claims against Grant even though (1) their assault and battery causes

7

of action are directed solely at Fowlkes and (2) their petition does not allege that Grant directly participated in the assault and battery (either as the pepper sprayer or as one of the blockers). According to Appellees, the bodily-injury exemption applies to their entire lawsuit; thus, it is irrelevant whether their specific claims against Grant seek recovery for bodily injuries. But Appellees' oversimplified analysis fails to take into account all of the TCPA's language and is contrary to existing caselaw.

Appellees, noting that the TCPA's definition of "legal action" includes "lawsuit" or "petition," *id.* 27.001(6)[5]—and applying simple substitution principles—posit that the bodily-injury exemption could be read as excluding "a [lawsuit or petition] seeking recovery for bodily injury" from the TCPA's scope. *Id.* § 27.010(a)(3). Based on this reading, Appellees contend that the TCPA's plain text dictates that their entire lawsuit is excluded from dismissal because their petition includes at least two claims—assault and battery—that undeniably seek recovery for bodily injury. *See Cavin v. Abbott*, 545 S.W.3d 47, 56 (Tex. App.—Austin 2017, no pet.) (defining bodily injury to mean "[p]hysical damage to a person's body" (quoting Black's Law Dictionary 906 (10th ed. 2014))).

But in making this argument, Appellees ignore the fact that the TCPA's definition of "legal action" also includes the narrower term "*cause of action*." Tex. Civ.

---

[5]The TCPA defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6).

Prac. & Rem. Code Ann. § 27.001(6) (emphasis added). Thus, using the Appellees' same substitution principles, the bodily-injury exemption could also be read to apply to any "[cause of action] seeking recovery for bodily injury." *Id.* § 27.010(a)(3). Such a reading obviously runs counter to Appellees' contention that their entire lawsuit is exempted from dismissal under the TCPA merely by virtue of the fact that it includes assault and battery causes of action and suggests instead that we must examine each of Appellees' individual causes of action and exempt only those actually "seeking recovery for bodily injury." *See id.* Accordingly, Appellees' assertion that we "can end [our] inquiry here"—that is, with the text of TCPA Sections 27.001(6) and 27.010(a)(3)—is simply incorrect.

The applicable case law makes clear that under a proper construction of Section 27.010, the TCPA's exemptions are to be applied on a cause-of-action-by-cause-of-action basis. *See Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 281–82 (Tex. App.—Tyler 2021, pet. denied); *KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 657–58 (Tex. App.—San Antonio 2021, no pet.); *see also Whataburger Rests., LLC v. Fuentes*, No. 08-23-00017-CV, 2023 WL 5808849, at *7 (Tex. App.—El Paso Sept. 7, 2023, no pet.) (mem. op.) (acknowledging that "the application of [a TCPA] exemption is determined on a cause-of-action-by-cause-of-action basis" but concluding on specific facts that appellee's negligence claim seeking damages for both bodily injury and property damage was a single cause of action to which the bodily-injury exemption applied); *cf. State ex rel. Best v. Harper*, 562 S.W.3d 1, 11–14 (Tex.

9

2018) (reading Section 27.010(a) exemption narrowly to effect liberal application of the TCPA in keeping with its overall purpose). Indeed, in both *Baylor Scott & White* and *KB Home Lone Star Inc.*, our sister courts explicitly rejected arguments—like the one raised by Appellees—that the presence of one exempt cause of action in a lawsuit effectively excludes the entire lawsuit from dismissal under the TCPA. *See Baylor Scott & White*, 633 S.W.3d at 281–82 (rejecting appellee's argument that its entire counterclaim was exempt under the TCPA's common-law-fraud exemption merely because one of its many alleged causes of action was a common-law-fraud claim); *KB Home Lone Star Inc.*, 629 S.W.3d at 657 (rejecting appellees' contention that because their lawsuit included an exempt DTPA claim, "the TCPA [could] not be used to dismiss any other pleading, claim, document, or filing within the[ir] lawsuit"). We agree with the Tyler Court of Appeals that the TCPA's exemption provision, which sets forth itemized exemptions applicable only to a specified laundry list of parties based on their statuses in the underlying suit and to different categories of causes of action based on the nature of the claims, reflects the legislature's intent to apply TCPA exemptions on a cause-of-action-by-cause-of action basis. *Baylor Scott & White*, 633 S.W.3d at 282; *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a). As our sister court observed,

> [g]iven that any particular lawsuit may involve multiple parties redressing several independent injuries through a multitude of different causes of action, [the TCPA's] laundry list exemption methodology demonstrates the legislature's intent to examine each exemption on a cause of action

10

by cause of action basis within the context of the entire lawsuit that otherwise falls within the TCPA.

*Baylor Scott & White*, 633 S.W.3d at 282.

Thus, we must individually examine Appellees' causes of action against Grant to determine whether any of them fall within the bodily-injury exemption. *See id.*; *see also KB Home Lone Star Inc.*, 629 S.W.3d at 657. As noted above, Appellees' petition alleges four causes of action, but only two of them—civil conspiracy and stalking—are directed against Grant. Accordingly, we will limit our analysis to these two claims.

### 1. Civil Conspiracy

To recover for civil conspiracy, a plaintiff must prove the following essential elements: (1) defendant was a member of a combination of two or more persons; (2) the combination's object was to accomplish either an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as the proximate result. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)); *see also* O'Connor's Texas Causes of Action ch. 37, § 1.1 (2022).

Civil conspiracy is not an independent tort; rather, it is a theory of vicarious liability by which a plaintiff may seek to hold a party liable for the commission of an unlawful act committed by a co-conspirator. *See Agar Corp.*, 580 S.W.3d at 141–42;

11

*Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Thus, civil conspiracy is a "derivative tort" that "survives or fails alongside" the underlying tort alleged. *Agar*, 580 S.W.3d at 141. Because of civil conspiracy's derivative status, such a claim does not provide an independent basis for liability; the plaintiff's damages result from the underlying tort, not the conspiracy itself. *See Backes v. Misko*, 486 S.W.3d 7, 27 (Tex. App.—Dallas 2015, pet. denied) (citing *Tilton*, 925 S.W.2d at 681); *see also Hart v. Moore*, 952 S.W.2d 90, 98 (Tex. App.—Amarillo 1997, pet. denied) ("Damages are not presumed from the existence of a conspiracy because the gist of a civil conspiracy action is the damage resulting from commission of a wrong which injures another, not the conspiracy itself.").

Here, Appellees' petition makes clear that their civil conspiracy claim is derivative of their assault and battery claims. Their petition specifically alleges that the defendants, including Grant and the other Elm Fork JBGC members, "agreed to inflict bodily injury on [Appellees]," "planned the attack, [and] acted as a shield for Fowlkes while he sprayed [Appellees] with pepper spray." Thus, through their civil conspiracy claim, Appellees seek to hold Grant and the other defendants liable for Appellees' underlying assault and battery claims arising from the pepper-spray attack. *See Agar Corp.*, 580 S.W.3d at 141–42.

Because Appellees' civil conspiracy claim is derivative of their assault and battery claims arising from the pepper-spray attack, it is a cause of action "seeking

12

recovery for bodily injury."[6]   Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(3).

Accordingly, the conspiracy claim falls within the TCPA's bodily-injury exemption, and the trial court did not err by denying Grant's TCPA motion to dismiss this cause of action.  *See id.*; *see also Baylor Scott & White*, 633 S.W.3d at 284 (holding that the TCPA's fraud exemption applied to appellee's civil conspiracy claim because that claim was derivative of a fraud cause of action).

### 2.  Stalking

The Texas Civil Practice & Remedies Code sets forth the following elements for a stalking claim:

> 1.  on more than one occasion the defendant engaged in harassing behavior;
>
> 2.  as a result of the harassing behavior, the claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's family; and

---

[6]In her brief, Grant argues that Appellees failed to show that the bodily-injury exemption applies to their civil conspiracy claim because the specific allegations against Grant are "weak at best and not specific enough to survive the motion to dismiss."  However, whether the bodily-injury exemption applies to a particular cause of action turns on the nature of the claim, not on the strength of the allegations supporting it.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(3); *see also Baylor Scott & White*, 633 S.W.3d at 282.  Indeed, if an exemption applies, the nonmovant is removed of its burden to establish a prima facie case by clear and specific evidence. *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 182 (Tex. App.—Austin 2020, no pet.) ("[T]he nonmovant can avoid its burden of demonstrating a prima facie case entirely by showing that one of the TCPA's several exemptions applies.").  Thus, Grant's arguments regarding the viability of Appellees' civil conspiracy claim are irrelevant to our analysis concerning whether the bodily-injury exemption applies.

3. the defendant violated a restraining order prohibiting harassing behavior or:

(A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;

(B) the defendant had the apparent ability to carry out the threat;

(C) the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety or the safety of a family member;

(D) the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;

(E) after the demand to stop by the claimant, the defendant continued the harassing behavior; and

(F) the harassing behavior has been reported to the police as a stalking offense.

Tex. Civ. Prac. & Rem. Code Ann. § 85.003(a). Thus, when—as in the present case—no restraining order is involved, a stalking claimant must prove, among other things, that the defendant repeatedly engaged in "harassing behavior"[7] and made one or more threats against the claimant, his family, or his property. *See id.*

Here, Appellees allege that the defendants, including Grant, have "created 'dossiers' on Appellees and their families" and that "on more than one occasion" the defendants have "engaged in harassing behavior towards [Appellees] in a manner

---

[7]The stalking statute defines "harassing behavior" as "conduct by the defendant directed specifically toward the claimant, including following the claimant, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the claimant." *Id.* § 85.001(4).

likely to and intended to harass, annoy, alarm, abuse[,] and torment [them]." They further allege that because of such behavior, Appellees "reasonably fear for their safety and the safety of their families"; that defendants have continued their harassing behavior even though Appellees have demanded that they stop "at least once"; and that Appellees have reported this behavior to law enforcement as a stalking offense.

At most,[8] Appellees' stalking claim is predicated on harassing behavior and *threats* of bodily injury; it does not appear to seek recovery for any *actual* bodily injury. Whether the TCPA's bodily-injury exemption applies to a claim arising from a mere threat of bodily injury is an open question. *See* O'Connor's Texas Causes of Action ch. 4-A, § 6.4 (2022) ("It is unclear to what extent the TCPA applies to . . . claims for assault by threat of bodily injury."). But we need not resolve this question because, as discussed below, we conclude that Grant has not satisfied her burden under the TCPA's first step to show that Appellees' stalking claim is "based on or is in response to" her exercise of a protected constitutional right. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *Miller*, 2022 WL 60606, at *1; *see also Temple*, 657 S.W.3d at 345–46

---

[8]As Grant points out, Appellees do not explicitly allege in their petition that the defendants—including Grant—made any specific threats, much less threats to inflict bodily injury. However, Appellees' petition describes at length the violent tactics employed in general by John Brown Gun Clubs, including the Elm Fork JBGC, and alleges that the defendants have "created 'dossiers'" on the Appellees and that Appellees "reasonably fear for their safety and the safety of their families." Thus, viewing the petition—as we must—in the light most favorable to Appellees, *see Maggret*, 2021 WL 2253244, at *2; *Stallion Oilfield Servs., Ltd.*, 592 S.W.3d at 214, we conclude that Appellees' petition, taken as a whole, impliedly alleges that the defendants threatened them with bodily injury.

15

(concluding that a court may address a TCPA movant's step-one burden and a nonmovant's exemption claim in any order).

## C. Appellees' Stalking Claim Is Beyond the TCPA's Scope

Grant argues that the TCPA applies to Appellees' stalking claim[9] because it is based on or is in response to her exercise of the rights to free speech, association, and petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1). We disagree.

As the Texas Supreme Court has recognized, when it comes to free speech,

> [t]he TCPA casts a wide net. . . . The "exercise of the right of free speech" extends to any "communication made in connection with a matter of public concern." *Id.* § 27.001(3). Almost every imaginable form of communication, in any medium, is covered. *Id.* § 27.001(1). A matter of public concern "includes" but is not limited to "an issue related to . . . environmental, economic, or community well-being; . . . the government; . . . or . . . a good, product, or service in the marketplace." *Id.* § 27.001(7).

*Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

The TCPA takes a similar approach to the rights of association and petition. It broadly defines the "exercise of the right to association" as "join[ing] together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2). The "exercise of the right to petition" extends to

---

[9]Having already determined that the bodily-injury exemption applies to Appellees' civil conspiracy claim, we limit our analysis under step one of the TCPA's analytical framework to Appellees' stalking claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(b)(1), 27.010(a)(3).

16

"any . . . communication that falls within the protection of the right to petition the government" under either the United States Constitution or the Texas Constitution, including, among other things, (1) "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding" or (2) a communication "that is reasonably likely to encourage" or to "enlist public participation in an effort to effect" such consideration or review. *Id.* § 27.001(4)(B)–(E).

"Despite the TCPA's broad implications, however, the act 'has its limits[,]' and not every communication falls under the statute." *Sanchez v. Striever*, 614 S.W.3d 233, 244 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied)). When interpreting the TCPA, we must not construe the statute's chosen words and phrases in isolation; rather, we must consider the context and framework of the entire statute and construe it as a whole. *See Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). Thus, the TCPA's broad definitions concerning the exercise of protected rights are necessarily restricted by the statute's expressly stated purpose "to encourage and safeguard the *constitutional* rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent *permitted by law*." *Sanchez*, 614 S.W.3d at 245 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (emphasis added)); *accord Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 219 (Tex.

17

App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g) (Jennings, J., concurring). "The TCPA plainly contemplates and encourages government participation, but only *law-abiding* participation comes within its purview." *Sanchez*, 614 S.W.3d at 245.

Bearing these principles in mind, we conclude that the TCPA does not apply to Appellees' stalking claim, which is predicated upon allegations of both harassing and threatening conduct—not on Grant's presence at or participation in the underlying protest or membership in the Elm Fork JBGC. *See Whitelock v. Stewart*, 661 S.W.3d 583, 606 (Tex. App.—El Paso 2023, pet. denied). "Although citizens most certainly do have a First Amendment right to associate to bring about social and political change for our 'common interests,' there is no constitutional right to engage in criminal behavior, commit civil wrongs, or otherwise inflict injury upon others." *Cheniere Energy*, 449 S.W.3d at 219 (Jennings, J., concurring); *see also Sanchez*, 614 S.W.3d at 244 ("Put simply, there is no constitutional right to engage in criminal behavior or commit civil wrongs."). Thus, the TCPA's definition of the "exercise of the right to association," broad though it may be, cannot be reasonably construed to protect harassing behavior or threatening conduct. *See Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 583 (Tex. App.—Fort Worth 2019, pet. denied) (rejecting interpretation of the right to association that would make the TCPA "a sword to protect the commission of civil wrongs"). Similarly, the alleged harassing and threatening conduct at the heart of Appellees' stalking claim cannot be considered a

18

protected communication[10] for purposes of the TCPA. *See Whitelock*, 661 S.W.3d at 606 (holding that the TCPA did not apply to appellees' intentional-infliction-of-emotional-distress claim, which involved allegations of threatening, assaultive, and destructive conduct, because "such conduct cannot be considered a protected communication about a matter of public concern within the meaning of the TCPA"); *Sanchez*, 614 S.W.3d at 245–46 (holding that protesters' assault of plaintiff was not a protected communication under the TCPA); *see also Webb v. Schlagal*, 530 S.W.3d 793, 805 (Tex. App.—Eastland 2017, no pet.) ("To the extent that [appellant's] e-mails and online posts constituted stalking or threatened [appellee], they were not protected speech under the First Amendment."); *cf. Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) ("Courts have made a distinction between communication and harassment. The difference is one between free speech and conduct that may be proscribed." (first citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 690–91 (1949); and then citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 112 S. Ct. 2538, 2546 (1992))); *Lewis v. State*, 88 S.W.3d 383, 392 (Tex. App.—Fort Worth 2002, pet. ref'd) ("Conduct enjoys no [F]irst [A]mendment protection when the actor intends to place the recipient in fear of bodily injury or death . . . . A person who knows or reasonably believes his conduct will be regarded as threatening bodily injury

---

[10]As defined by the TCPA, both the exercise of the right to free speech and the exercise of the right to petition constitute a type of "communication." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3)–(4).

or death is necessarily on notice that his conduct is prohibited."). Therefore, we cannot say that Appellees' stalking claim is "based on" or "in response to" Grant's exercise of the right to free speech, association, or petition as those terms are used in the TCPA.[11] *See Whitelock*, 661 S.W.3d at 606.

Because Appellees' stalking claim does not fall within the TCPA's scope, the trial court did not err by denying Grant's motion to dismiss this cause of action. *See In re Estate of L.R.M.*, No. 13-19-00598-CV, 2021 WL 5365097, at \*3 (Tex. App.—Corpus Christi–Edinburg Nov. 18, 2021, no pet.) (mem. op.).

## IV. CONCLUSION

Having determined that (1) the TCPA's bodily-injury exemption applies to Appellees' civil conspiracy claim, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(3), and (2) Appellees' stalking claim is beyond the TCPA's purview, *see id.* § 27.005(b), we affirm the trial court's order denying Grant's motion to dismiss and remand this matter for further proceedings.

/s/ Dana Womack

Dana Womack
Justice

Delivered: December 28, 2023

---

[11]We note that Appellees' petition expressly states that "[f]or the avoidance of doubt, [Appellees'] claims . . . do <u>not</u> extend to any speech, expression, or association activities of Defendants. . . . Instead, [Appellees'] claims are directed at Defendants' violent actions and violations of criminal law."

20